UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWIN DIAZ,<br><br>                    Plaintiff,<br><br>          -v.-<br><br>THE KROGER CO.,<br><br>                    Defendant. | 18 Civ. 7953 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

In this action, Plaintiff Edward Diaz claims that the website of Defendant The Kroger Co. is not compliant with Title III of the Americans with the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181-12189 (the "ADA"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (the "NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-131 (the "NYCHRL"); and the New York Civil Rights Law §§ 40-41 (the "NYCRL"), because the website denies equal access to visually-impaired customers.  Defendant moves to dismiss under two different subparts of Federal Rule of Civil Procedure 12(b): under Rule 12(b)(1) for lack of subject matter jurisdiction, and under Rule 12(b)(2) for lack of personal jurisdiction.  In relevant part, Defendant claims that it has remedied the barriers to access in its website, and that it does not conduct business in New York State.  For the reasons set forth below, Defendant's motion is granted.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff is a visually-impaired and legally blind individual who resides in the Bronx, New York.  (FAC ¶¶ 2, 11).  Defendant is a supermarket chain, with a principal place of business in Cincinnati, Ohio.  (*Id.* at ¶ 20; Whiting Decl. ¶ 3).[2]  In addition to maintaining brick and mortar locations, none of which is located in New York State (Whiting Decl. ¶ 6), Defendant operates the website www.kroger.com (the "Website"), from which consumers may purchase goods for delivery (FAC ¶ 23).  The Website also provides information on Kroger

---

[1]    This Opinion draws its facts from the First Amended Complaint ("FAC" (Dkt. #14)), the well-pleaded facts of which are taken as true for purposes of this motion.  *See Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009).  The Opinion also draws on two additional sources: (i) the Affidavit of Andrew Whiting, which is included with Defendant's submission ("Whiting Decl." (Dkt. #23)); and (ii) the website Kroger.com, which is incorporated by reference in the FAC, in its present configuration.  *See Del-Orden* v. *Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *1 n.1 (S.D.N.Y. Dec. 20, 2017).

For ease of reference, the Court refers to the parties' briefing as follows:  Defendant's Memorandum of Law in Support of its Motion to Dismiss as "Def. Br." (Dkt. #22); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss as "Pl. Opp." (Dkt. #30); and Defendant's Memorandum of Law in Further Support of Defendant's Motion to Dismiss as "Def. Reply" (Dkt. #31).

[2]    Plaintiff avers that "Defendant operates KROGER stores across the United States, and is the parent Company to numerous other commercial establishments, throughout the United States, including New York."  (FAC ¶ 21; *see also id.* at ¶ 20 ("Defendant is an American retail company and owns the largest supermarket chain by revenue, that operates KROGER stores (its 'Stores') as well as the KROGER website, offering features which should allow all consumers to access the goods and services and which Defendant ensures the delivery of such goods throughout the United States, including New York State.")).  As discussed further in this Opinion, however, Plaintiff does not contest that Defendant operates no Kroger stores in New York, and the Court's review of the Website discloses that Kroger does not deliver goods anywhere in New York.

promotions and coupons, as well as the calorie content and optimal cook time for certain food items. (*Id.*).

Plaintiff alleges that the Website denies equal access to blind customers. (FAC ¶ 4). Specifically, Defendant has allegedly failed to "design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other blind or visually impaired people." (*Id.*). According to Plaintiff, visually-impaired customers cannot use a computer without the assistance of screen-reading software, which converts online content to an audio format. (*Id.* at ¶ 25). For this software to function, the information on a website must be capable of being rendered into text. (*Id.* at ¶ 12). Otherwise, visually-impaired customers are unable to access the same content available to sighted users. (*Id.* at ¶ 17).

Plaintiff visited the Website on several occasions, with the last visit occurring in November 2018. (FAC ¶ 26). During those visits, Plaintiff encountered accessibility barriers, including the inability of information to be rendered into text. (*Id.* at ¶¶ 26, 27). As a result, Plaintiff was unable "to learn more information, the ability to browse products available for delivery, find information on promotions and coupons, and related goods and services available online." (*Id.* at ¶ 29).

B.   **Procedural Background**

Plaintiff filed his Complaint in this action on August 30, 2018. (Dkt. #1). On September 27, 2018, Defendant requested leave to file a motion to dismiss (Dkt. #8), and the Court held a pre-motion conference on October 31, 2018

(Dkt. #12). The Court granted Plaintiff leave to amend his complaint, and he filed the FAC on November 9, 2018. (Dkt. #14). Defendant then moved to dismiss the FAC on February 7, 2019. (Dkt. #21-23). Plaintiff filed an opposition brief on March 4, 2019. (Dkt. #30).[3] This motion became fully briefed when Defendant filed its reply brief on March 11, 2019. (Dkt. #31).

## DISCUSSION

### A.   The Court Lacks Subject Matter Jurisdiction over the Instant Action

The Court begins by discussing Defendant's motion to dismiss for a lack of subject matter jurisdiction under Rule 12(b)(1). As set forth in the remainder of this section, the Court concludes that Plaintiff's claims have been mooted by Defendant's remediation efforts.

#### 1.   Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1)

Courts may dismiss an otherwise sufficient complaint for a lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). In evaluating a motion under Rule 12(b)(1), a court must "accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp.* v. *Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). Even so, a court may not premise jurisdiction on favorable inferences drawn from the pleadings. *Id.* Instead, a plaintiff must show by a preponderance of the

---

[3]   Plaintiff initially filed his opposition brief on February 19, 2019. (Dkt. #24). However, the filed brief was incomplete, and, for that reason, Defendant filed a motion to strike. (Dkt. #27). The Court granted the motion to strike and permitted Plaintiff to file an amended brief by March 4, 2019. (Dkt. #29).

evidence that subject matter jurisdiction lies over the dispute. *Makarova*, 201 F.3d at 113. When deciding a motion under Rule 12(b)(1), a court may rely on evidence outside the complaint. *Cortlandt St. Recovery Corp.* v. *Hellas Telecomm., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015).

A request for injunctive relief, such as that sought by Plaintiff under the ADA, will only be deemed moot by a defendant's voluntary compliance with the statute if the defendant meets the "formidable burden" of demonstrating that it is "absolutely clear the alleged wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs.* (TOC), Inc., 528 U.S. 167, 190 (2000); *see also Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 91-92 (2013); *Clear Channel Outdoor, Inc.* v. *City of New York*, 594 F.3d 94, 110 (2d Cir. 2010).[4] More specifically, "[t]he voluntary cessation of allegedly illegal activity may render a case moot 'if the defendant can demonstrate that [i] there is no reasonable expectation that the alleged violation will recur and [ii] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Clear Channel*, 594 F.3d at 110 (quoting *Campbell* v. *Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)).

## 2. Discussion

Defendant argues that the Court lacks subject matter jurisdiction over this case because the FAC has been rendered moot by the modifications

---

[4] *See also Campbell-Ewald Co.* v. *Gomez*, 136 S. Ct. 663, 669 (2016) (observing that mootness occurs "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (citations and internal quotation marks omitted)).

Defendant has made to the Website before and after Plaintiff initiated this lawsuit. (*See* Def. Br. 5-8). According to an affidavit submitted by Andrew Whiting, Defendant's Group Product Design Manager, Defendant has remedied all of the alleged ADA violations; it has ensured that no additional barriers to accessing the Website exist; and it has committed to ensuring access on a going-forward basis:

> 8. Prior to the inception of this lawsuit, Kroger has undertaken to comply with the Website Content Accessibility Guidelines ("WCAG") and is compliant with WCAG 2.0 standards.
>
> 9. After Kroger was served with the Complaint in this action, I personally reviewed the Complaint and understand all the alleged deficiencies with the Kroger website alleged in the Complaint (and First Amended Complaint).
>
> 10. I have personally made sure that all such deficiencies alleged in the Complaint and First Amended Complaint have been remedied and that no such barriers to access, as alleged, still exist with www.Kroger.com.
>
> 11. Since www.Kroger.com is now compliant with the WCAG 2.0 standards, there is no reason for Kroger to undo the changes that have been made.
>
> 12. Kroger is committed to continuing to keep its website up to date and compliant with all applicable standards to make the website as accessible to all as possible.
>
> 13. Kroger does not intend to let its website fall behind the current standards and will continue to keep the website up to date with any new standards because it does not wish to be involved in any further, unnecessary litigation and because of its commitment to being

>    accessible to as many of its patrons, and as much of the
>    public, as possible.

(Whiting Decl. ¶¶ 8-13).

The Court is aware that there are few cases in the federal courts, and none with precedential value, on this issue. It has reviewed the cases cited by the parties and others that were not cited. It recognizes that several sister courts in this District have found, on the facts of those cases, that the defendants had failed to establish mootness. *See, e.g., Sullivan* v. *Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 WL 1299966, at *5 (S.D.N.Y. Mar. 21, 2019) (rejecting mootness argument where plaintiff identified continued barriers to accessing certain videos on defendant's website); *Wu* v. *Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 442 (S.D.N.Y. 2018) (same, where defendant did "not provide any affirmative showing that its current website is ADA-compliant, and will remain that way, beyond asserting so and citing to the website itself"); *Del-Orden* v. *Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *11-12 (S.D.N.Y. Dec. 20, 2017) (same, where complaint alleged, and court's review of website confirmed, at least one continued barrier to access); *cf. Feltenstein* v. *City of New Rochelle*, 254 F. Supp. 3d 647 (S.D.N.Y. 2017) (rejecting claim where defendant was still remediating access at time of filing the motion and where supporting affidavit provided insufficient detail to corroborate claims of compliance with ADA).

The instant case is different. Mr. Whiting's affidavit addresses the deficiencies that courts have identified in defense showings made in support of mootness arguments. *See generally Haynes* v. *Hooters of Am., LLC*, 893 F.3d

781, 784 (11th Cir. 2018) (rejecting mootness argument based on remediation plan entered into in prior unrelated litigation, where (i) the record did not indicate that the plan had been fully implemented; (ii) plaintiff was entitled to injunctive relief to compel defendant to continually update and maintain its website to ensure continued compliance; and (iii) plaintiff had no ability to enforce compliance with remediation plan). Significantly, Mr. Whiting does not present some future plan for remediation of the Website, or some conclusory assertion that the Website is today compliant with the ADA. Instead, Mr. Whiting avers specifically that (i) Defendant undertook compliance with the WCAG standards before the lawsuit was filed; (ii) the Website is today compliant with those standards; (iii) he personally confirmed that the specific barriers to access identified in Plaintiff's initial and amended complaints "have been remedied and that no such barriers to access, as alleged, still exist with the website"; (iv) Defendant has no intention of undoing those changes or regressing to non-compliance with the ADA; and (v) Defendant commits "to keep its website up to date and compliant with all applicable standards to make the website as accessible to all as possible." (Whiting Aff. ¶¶ 8-13). This is a level of detail that the Court has not observed in the other cases it has reviewed.

In opposing the motion, Plaintiff argues first that Mr. Whiting is an unreliable affiant "who has everything to gain in his attempt to dissuade this Court from continuing this action." (Pl. Opp. 10). This argument overstates the issue, inasmuch as Mr. Whiting is an employee of Defendant and not a

8

party to this lawsuit.[5] More to the point, Plaintiff does not dispute the factual assertions Mr. Whiting makes regarding Defendant's efforts at ADA compliance.[6] Instead, Plaintiff argues that "mere plans do not moot an ADA case." (*Id.* at 11 (decapitalization added)). The Court agrees, but finds the argument to be irrelevant to the instant case, where the modifications are not merely proposed, but completed.

Alternatively, Plaintiff argues that ADA cases involving websites can *never* be mooted, because websites are "constantly revised, updated and edited, with new pages being added and others being replaced or deleted." (*See* Pl. Opp. 12-13 (collecting cases)). The Court recognizes that a few district courts outside of this Circuit have so concluded. *See, e.g., Brooke* v. *A-Ventures, LLC*, No. 2:17 Civ. 2868 (HRH), 2017 WL 5624941, at *3 (D. Ariz. Nov. 22, 2017). Plaintiff, for his part, relies on two cases: *Nat'l Fed'n of Blind* v. *Target Corp.*,

---

[5] If anything, Mr. Whiting's employment status bolsters the assertions in his affidavit. It is precisely because of his job that Mr. Whiting is in the best position to swear not only that Defendant made modifications to the Website, but that the conduct will not reoccur. For this reason, courts in this District prefer, if not require, affiants to have personal knowledge of the situation. *See Feltenstein* v. *City of New Rochelle*, 254 F. Supp. 3d 647, 657 (S.D.N.Y. 2017) (finding affidavit insufficient to establish compliance with the ADA when "the affiant did not claim to have personal knowledge of the work performed"). Generally, those with personal knowledge of alleged compliance or non-compliance will have some relation to either party, s*ee, e.g., Sullivan* v. *Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 WL 1299966, at *1 (S.D.N.Y. Mar. 21, 2019), and Plaintiff has not offered any evidence that Mr. Whiting's affidavit is otherwise unreliable.

[6] To be sure, Plaintiff argues that Defendant's mootness claim is "premature because no exchange of discovery or any other dispositive proceedings were conducted." (Pl. Opp. 14). However, Plaintiff does not suggest that discovery will disprove Mr. Whiting's averments concerning compliance. Given Plaintiff's proficiency with the JAWS screen-reading software program, which he has used to great effect in bringing ADA cases of this type, the Court is confident that Plaintiff could readily have accessed the Website after reviewing Defendant's submissions in order to ascertain whether any barriers to the use and enjoyment of the Website remain for visually-impaired consumers.

582 F. Supp. 2d 1185 (N.D. Cal. 2007), and *Houston* v. *7-Eleven, Inc.,* No. 13 Civ. 60004, 2014 WL 351970, at *3 (S.D. Fla. Jan. 31, 2014).

The cases on which Plaintiff relies are distinguishable. In *National Federation of the Blind*, the court rejected arguments that ADA accessibility claims were moot; although the court recognized that "the continuous addition of new pages to Target.com argues against a mootness finding," the court relied principally on its finding that the post-filing modifications to Target.com did not resolve all of the plaintiff's accessibility claims. 582 F. Supp. 2d at 1193. By contrast, in *Houston*, no website was at issue and the court found that the defendant's physical alterations to its storefront mooted the case. *See* 2014 WL 351970, at *4.

Plaintiff cites the *Houston* case for the broader proposition that structural modifications to a building are more permanent than alterations to a website. (Pl. Opp. 13). From this, he reasons, alleged violations are more likely to reoccur in the case of websites. (*Id.*). The Court does not disagree. However, the Court cannot adopt Plaintiff's sweeping, technology-specific exception to the mootness doctrine. Rather, the Court believes that ADA cases involving websites are subject to the same mootness standard as their "structural" counterparts. In point of fact, the first prong of the test — determining whether there is a reasonable expectation that the alleged violation will reoccur — accounts for Plaintiff's concerns. When making that determination, courts may consider, along with a variety of factors, the nature of the violation and the ease of reversibility. But it cannot be said that an ADA claim involving

10

a website can never be mooted, solely because of the technological characteristics of websites. Such limit is both unnecessary and would insert a brittle, technology-specific exception into the mootness doctrine that would itself become obsolete in an era of rapidly-changing technology.

To review, Plaintiff identified several barriers to his use and enjoyment of the Website. Defendant removed those barriers, brought the Website into compliance with Plaintiff's preferred WCAG 2.0 standard, and commits to monitoring technological developments in the future to ensure that visually-impaired individuals have equal access to the Website. On this record, Defendant has met the stringent showing required by the Supreme Court's mootness precedents. The Court accordingly lacks subject matter jurisdiction to consider Plaintiff's claims.[7]

## B.     The Court Lacks Personal Jurisdiction over Defendant

The Court recognizes that, in instances in which it determines that it lacks subject matter jurisdiction, the preferred course of action is to refrain from considering other arguments proffered by the movant. *See, e.g., Cornwell v. Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2009) ("[A]bsent

---

[7]     Relatedly, Plaintiff argues that the injunctive relief component of the ADA forecloses a finding of mootness, relying on a decision from the Eleventh Circuit. (*See* Pl. Opp. 13-15 (citing *Haynes* v. *Hooters of Am., LLC*, 893 F.3d 781, 784 (11th Cir. 2018))). This Court has found no analogue to the *Haynes* decision in the Second Circuit. To the contrary, sister courts in this Circuit have recognized in the ADA context that a request for prospective injunctive relief can be mooted by a defendant's conduct, though the burden is "formidable." *See Del-Orden*, 2017 WL 6547902, at *4; *Feltenstein* v. *City of New Rochelle*, 254 F. Supp. 3d 647, 656 (S.D.N.Y. 2017) ("A request for injunctive relief will only be deemed moot by a defendant's voluntary compliance if the defendant meets the 'formidable burden' of demonstrating that it is 'absolutely clear the alleged wrongful behavior could not reasonably be expected to recur.'" (quoting *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000))).

authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further."); *Norex Petroleum Ltd.* v. *Access Indus.*, 540 F. Supp. 2d 438, 449 (S.D.N.Y. 2007) (observing that dismissal for lack of jurisdiction "moots, and thus terminates, all other pending motions"). However, to a degree, the Court's jurisdictional discussion breaks new ground. A reviewing court may ultimately disagree with its analysis. There is a separate basis to dismiss Plaintiff's case, and it concerns the Court's lack of personal jurisdiction over Defendant. The Court addresses that separate basis in the remainder of this Opinion.

### 1. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). To survive a motion to dismiss, a plaintiff need only provide "legally sufficient allegations of jurisdiction." *Id.* A plaintiff makes such a showing through "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* at 567 (quoting *Ball* v. *Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Plaintiff's jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)). Where a court does not hold an evidentiary hearing on the jurisdictional question, it

may, nevertheless, consider matters outside the pleadings.  *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

To determine whether the exercise of personal jurisdiction is proper, a court conducts a two-part inquiry:  *First*, a court looks at whether there is a basis for personal jurisdiction under the laws of the forum state.  *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).  Here, the relevant inquiry centers on New York's long-arm statute, which provides, in relevant part, that a court may exercise personal jurisdiction "over any non-domiciliary ... who in person or through an agent ... transacts any business within the state," so long as the cause of action "aris[es] from" that transaction.  N.Y. C.P.L.R. § 302(a)(1).  Accordingly, a court may exercise personal jurisdiction over a non-domiciliary if two conditions are met: "first, the non-domiciliary must transact business within the state; second, the claims against the non-domiciliary must arise out of that business activity."  *Aquiline Capital Partners LLC* v. *FinArch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (internal citations and quotations omitted).

*Second*, a court must examine whether the exercise of personal jurisdiction comports with due process.  *Licci*, 732 F.3d at 168.  "Due process considerations require that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Id.* at 169 (internal quotation marks omitted).  Put differently, due process is not violated when a defendant is "haled into court in a forum State based on his own affiliation

with the state[.]" *Walden* v. *Fiore*, 571 U.S. 277, 286 (2014).  In deciding whether the exercise of jurisdiction is reasonable, a court considers "[i] the burden that the exercise of jurisdiction will impose on the defendant; [ii] the interests of the forum state in adjudicating the case; [iii] the plaintiff's interest in obtaining convenient and effective relief; [iv] the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and [v] the shared interest of the states in furthering substantive social policies." *Robertson-Ceco*, 84 F.3d at 568 (quoting *Asahi Metal Indus. Co., Ltd.* v. *Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113-14 (1987)).  While due process is distinct from a statutory basis for personal jurisdiction, the Second Circuit has noted that it would be the "rare" case where personal jurisdiction was proper under New York's long-arm statute but not under a due process analysis. *Eades* v. *Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (internal quotation marks omitted).

   2.  **Discussion**

Defendant, an Ohio corporation with its principal place of business in Cincinnati, argues that New York's long-arm statue does not subject it to this Court's jurisdiction.  (Whiting Aff. ¶ 3; Def. Br. 8-19).[8]  To review, under New York's Civil Practice Law and Rules ("CPLR") § 302(a)(1), New York's long-arm statute, a court may exercise personal jurisdiction over a non-domiciliary if

---

[8]   Defendant argues, and Plaintiff does not dispute, that the Court lacks general jurisdiction over Kroger.  (*See* Def. Br. 9-10, 12-13).  Instead, Plaintiff asserts that the Court may exercise personal jurisdiction over Defendant pursuant to CPLR § 302(a)(1). (*See* Pl. Opp. 15-19).  For that reason, the Court deems this argument to be waived and does not address the issue of general jurisdiction.

14

(i) the non-domiciliary transacts business in New York state; and (ii) the claims against the non-domiciliary arise out of that business activity. *See Aquiline Capital Partners LLC*, 861 F. Supp. 2d at 386. Plaintiff argues that § 302(a)(1), which may be met by a single act within New York, *see Licci*, 673 F.3d at 59, is satisfied by Defendant's "operation of an Internet website." (Pl. Opp. 18-19).

When considering whether to exercise personal jurisdiction over a defendant because of its website, the Second Circuit admonishes district courts to look to the degree of interactivity and commercial nature of the exchange of information that occurs on the site. *See Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 252 (2d Cir. 2007) ("We think that a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant 'transacts any business' in New York."). A website's degree of "interactivity," as explained by the Second Circuit, exists on a spectrum. *See id.* At one end of the spectrum are passive websites, which do not confer jurisdiction. These websites generally "only provide[] information about services for sale and contact information for the seller, without any ability to directly purchase the services through the website." *A.W.L.I. Grp., Inc.* v. *Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 568 (E.D.N.Y. 2011). On the other end are fully interactive websites, which "knowingly transmit goods or services to users in other states," and are sufficient to confer personal jurisdiction pursuant to section 302(a)(1). *Royalty Network Inc.* v. *Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009). "Finally, occupying the middle ground are cases in which the defendant

maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction." *Citigroup Inc.* v. *City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).

Here, Plaintiff alleges that the Website provides a variety of services, "including the ability to ... find information on promotions and coupons, discern the calorie content of food, [as well as] preferred cook time and temperature[.]" (FAC ¶ 22). None of these factors, considered together or in isolation, is enough to confer personal jurisdiction. Instead, Plaintiff must "establish[] a reasonable probability that [the Website has] been "actually used to effect commercial transactions with customers in New York." *See Alibaba Grp. Holding Ltd.* v. *Alibabacoin Found.*, No. 18 Civ. 2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018). "[T]he existence of an interactive patently commercial website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York." *Id.*

Critically, the parties dispute whether New York residents can purchase goods from the Website for delivery to New York addresses. Plaintiff argues, in both the FAC and his opposition brief, that New York customers are able to order goods for delivery from the Website. (*See* FAC ¶¶ 20, 23; Pl. Opp. 16). Defendant disagrees. (*See* Def. Br. 11 ("[T]here is no evidence or allegation that [Defendant] ever actually has directly shipped goods into the State of New York.")). Defendant asserts that Plaintiff's bald allegation is nonsensical

16

because Defendant does not operate any retail stores in New York state. (Whiting Aff. ¶ 6). In point of fact, the closest store to Plaintiff's Bronx home is 275 miles away in Hayes, Virginia. (*Id.* at ¶ 7; *see also* Def. Br. 8 ("[W]hen ordering groceries online, it is unreasonable to place an order from a store 275 miles away.")).[9]

In light of this disagreement between the parties, the Court reviewed the Website for the limited purpose of determining whether the Website allows a buyer in New York to submit an order online.[10] The Court's review confirms that "delivery is not available" to *any* New York state zip code. Therefore, the Court finds that Defendant does not sell, through the Website, goods or services to New York residents. In consequence, the fact that Plaintiff can access the Website in the Bronx, standing alone, does not amount to Defendant's transacting business in the state for purposes of New York's long-arm statute. *See Best Van Lines*, 490 F.3d at 250 (concluding that maintaining "a website accessible in New York does not, without more, constitute transacting business in New York for the purposes of New York's long-arm statute"); c*f. Chloe* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d

---

[9] Defendant asserts, and Plaintiff does not dispute, that when a customer places an online order for delivery, the goods are shipped directly from store locations, as opposed to distribution centers. (*See* Def. Br. 8). During the Court's review, the Website also indicated, although not explicitly, that goods are shipped from a storefront location.

[10] The Website is incorporated by reference in the FAC, and thus properly before the Court on a motion to dismiss. *See Del-Orden*, 2017 WL 6547902, at *12 n.3 (considering the website at issue "in its present configuration" when resolving a defendant's motion to dismiss ADA claims). Sister courts in this District routinely conduct their own reviews of similarly incorporated websites. *See, e.g., Atl. Recording Corp.* v. *Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694 (S.D.N.Y. 2009); *Orozco* v. *Fresh Direct, LLC*, No. 15 Civ. 8226 (VEC), 2016 WL 5416510, at *5 n.9 (S.D.N.Y. Sept. 27, 2016).

Cir. 2010) (finding personal jurisdiction when defendant "operated a highly interactive website offering such bags for sale to New York consumers"). For that reason, the Court grants Defendant's motion to dismiss for lack of personal jurisdiction.[11]

## CONCLUSION

For the reasons stated in this Opinion, the Defendant's motion to dismiss is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: June 4, 2019
New York, New York

KATHERINE POLK FAILLA
United States District Judge

---

[11] Because the exercise of personal jurisdiction is proscribed by New York's long-arm statute, the Court does not consider whether the exercise of personal jurisdiction over Defendant is consistent with due process. Similarly, the Court does not address Defendant's third argument, that Plaintiff does not have standing to bring the instant action. (*See* Def. Br. 14-19).